## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

LEON WEBSTER HIGGINS,     )
                        )
        **Plaintiff,**     )
**v.**                       )     **Case No. CIV-10-312-RAW-SPS**
                        )
**MICHAEL J. ASTRUE,**     )
**Commissioner of the Social**     )
**Security Administration,**     )
                        )
        **Defendant.**     )

## REPORT AND RECOMMENDATION

The claimant Leon Webster Higgins requests review of the Commissioner of the Social Security Administration's decision denying him benefits under the Social Security Act pursuant to 42 U.S.C. § 405(g). The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on December 15, 1987 and was twenty-one years old at the time of the administrative hearing. He has a tenth grade education and no past relevant work (Tr. 387). The claimant alleges a disability onset date of December 15, 1987 and claims he is unable to work due to attention deficit disorder (ADD), attention deficit hyperactivity disorder (ADHD), and illiteracy (Tr. 212).

## Procedural History

On September 5, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a decision dated July 1, 2009. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had severe impairments (borderline intellectual functioning, depression, and

anxiety) but had the residual functional capacity ("RFC") to perform work at all exertional levels, limited to simple, repetitive tasks and only incidental contact with the public (Tr. 17, 19). The ALJ concluded that the claimant was not disabled because there was work he could perform existing in significant numbers in the national economy, *i. e.*, shipping/receiving clerk and janitor (Tr. 24).

## Review

The claimant contends that the ALJ erred by: (i) erroneously assessing his RFC; (ii) failing to properly analyze the opinion of his treating physician Dr. Weldon Mallgren, D.O., regarding his mental health limitations; (iii) failing to find that his impairments met Listing 12.05(A); (iv) failing to properly analyze "other source" evidence, *i. e.*, the lay testimony of his neighbor, Shelly Pierce, and the third party function report of his mother, Michelle Comiford; and (v) erroneously finding that he could perform work at step five. The undersigned Magistrate Judge finds that the ALJ *did* fail to properly analyze the opinion of the claimant's treating physician, and the decision of the Commissioner should therefore be reversed.

The claimant's difficulties began at birth, when he was born with his umbilical cord wrapped around his head three times, cutting off his oxygen supply and requiring a one week hospitalization (Tr. 195). When he was ten years old, a psychoeducational evaluation was conducted by Sandi Johnson, M.S., a school psychology specialist working for Lincoln Public Schools in Lincoln, Arkansas (Tr. 195). Ms. Johnson wrote that claimant "worked at an inconsistent speed depending on the task – at times he was

impulsive and at other times he worked slowly," and the results of his Wechsler Intelligence Scale for Children-III (WISC-III) revealed a full scale IQ score of 55, which is in the deficient range (Tr. 195-96). Although each of his subtest scores on the Wechsler Individual Achievement Test were higher than his full scale IQ score, these scores still "ranged from deficient to borderline" (Tr. 196). In a 2003 psychoeducational evaluation administered by Freda Waters, an educational examiner, the claimant was noted to be "very distractible" and "was more interested in what everyone else was doing rather than what he should be doing" (Tr. 191). His WISC-III scores at that time revealed that he was functioning in the borderline range of intelligence and it was recommended at that time that claimant be placed in special classes "as a student with Mental Retardation" (Tr. 192). A Language/Communicative Abilities Assessment was performed by Mary W. Ford, M.S., CCC-SLP, a speech pathologist with Huntsville Public Schools, in an effort to further identify claimant's educational needs. The CELF-3 diagnostic subtests were administered, and claimant scored significantly below normal in all areas of testing, including, *inter alia*, semantic relationships and sentence assembly, and his composite scores in receptive language, expressive language, and total language were, likewise, significantly below average and indicated that claimant's receptive and expressive language scores were "severely delayed for his chronological age" (Tr. 177). During this battery of testing, the Test of Word Knowledge (TOWK), which provides some understanding of a student's ability to follow directions, was administered and claimant's scores were also significantly below average in all areas tested, suggesting "below

average expressive, receptive and total language abilities in the area of semantics" (Tr. 178). In 2004, the claimant was found to be reading at a level of 1.3-2.4, and his progress report indicates that he would "require a great deal of one on one instruction in order to be successful" (Tr. 148). He was found to be "distractible, had trouble keeping up and in general his attention problems affected his learning;" he was functioning in the borderline range of intelligence at that time (Tr. 126).

On November 8, 2007, the claimant was evaluated on his disability claim by state consultative physician Larry Vaught, Ph.D. During this examination, the Wechsler Adult Intelligence Scale-III was administered. Claimant's performance I.Q. was determined to be 67, verbal I.Q. was determined to be 72, and his full scale I.Q. was assessed at 67 (Tr. 281). Dr. Vaught noted that claimant's scores were "in the range of mild retardation" and diagnosed claimant with Attention Deficit Hyperactivity Disorder (ADHD) by history and mild mental retardation (Tr. 281).

A Psychiatric Review Technique was completed by Dr. Lynette S. Causey, Ph.D., a state reviewing physician, and Dr. Causey found that the claimant suffered from mental retardation as evidenced by a valid verbal, performance, or full scale I.Q. of 60 through 70 (Tr. 291). Her mental RFC findings indicated that claimant suffered from mild limitation in activities of daily living, moderate limitations related to difficulties in maintaining social functioning, and marked limitations related to difficulties in maintaining concentration, persistence, or pace (Tr. 297).

The claimant began receiving mental health treatment at Grand Lake Mental Health Center in March 2008. On March 31, 2008, the claimant's comprehensive assessment at the Center was conducted by Amy Humphrey, MSW, who found that claimant complained of problems related to depression, anger, and anxiety, had a history of physical altercations, and "exhibited anxiety during [the] assessment . . . shaking his leg constantly" (Tr. 351). The claimant reported that he had suffered physical abuse at the hands of his mother, father, brother, sister and a maternal uncle, and that he had been sexually abused by his father when he was four or five years of age (Tr. 352). The claimant reported that his hobbies included hunting, fishing, bull riding and football, and he related to Ms. Humphrey that he had attempted suicide on ten prior occasions "by cutting and overdose" (Tr. 352). Ms. Humphrey's diagnostic impressions at that time were that claimant suffered from major depressive disorder without psychotic features and generalized anxiety disorder, and she assessed his GAF at a 47 (Tr. 353).

In September 2008, the claimant was still experiencing depressive symptoms and anxiety daily, with panic attacks occurring 3-4 times per week (Tr. 335). The claimant reported frequent crying spells, poor memory, concentration, and poor sleeping patterns due to "racing thoughts" (Tr. 335). His GAF remained at a 47 (Tr. 335). The claimant was discharged from the Center on January 20, 2009, because of noncompliance with his treatment plan (Tr. 354).

Dr. Mallgren completed a Mental Residual Functional Capacity Questionnaire on January 23, 2009. Dr. Mallgren wrote that claimant displayed "poor memory,

concentration and poor judgment on a daily basis" and "difficulty maintaining attention for any length of time" (Tr. 361). Dr. Mallgren opined that claimant had marked limitations in the following areas: (i) maintaining attention for two hour segment; (ii) maintaining regular attendance and being punctual within customary, usually strict tolerances; (iii) sustaining an ordinary routine without special supervision; (iv) making simple work-related decisions; (v) getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (vi) dealing with normal work stress (Tr. 361). Dr. Mallgren further found that claimant had extreme limitations in the following areas: (i) working in coordination with or proximity to others without being unduly distracted; (ii) completing a normal workday and workweek without interruptions from psychologically based symptoms; (iii) performing at a consistent pace without an unreasonable number and length of rest periods; and (iv) responding appropriately to changes in a routine work setting (Tr. 361). The claimant was also noted to have marked limitations in his ability to understand and remember detailed instructions and extreme limitations in his ability to carry out detailed instructions, set realistic goals or make plans independently of others, and deal with stress of semiskilled and skilled work, and Dr. Mallgren explained these limitations by writing that claimant displayed "poor short-term memory as well as difficulty managing stress on a daily basis" (Tr. 362). Overall, Dr. Mallgren found that claimant had marked limitations in his restriction of activities of daily living, difficulties in maintaining social functioning, and deficiencies of concentration, persistence or pace (Tr. 363).

The claimant was admitted to Wagoner Community Hospital on June 29, 2009, on an emergency detention order from Mayes County resulting from an apparent suicide attempt (Tr. 370). He was diagnosed by Dr. Shalini Sangal, M.D. with schizoaffective disorder, depressed type and post-traumatic stress disorder, and his GAF was assessed to be 30 upon admission and 45 upon discharge (Tr. 371-72).

The claimant testified at the administrative hearing that he is unable to read and write, do simple math, *i. e.*, make change at a store, cook, or write his middle name (Tr. 387, 391-92). He has difficulty keeping his medications straight, as he cannot read the prescription pill bottle (Tr. 390). The claimant's neighbor, Shelly Pierce, helps him take care of his daily needs, including helping him to remember to bathe, and he has feelings that he is worthless (Tr. 390-91). He lives alone, but has no running water and electricity only in the kitchen (which he had only had for three days at the time of the administrative hearing) (Tr. 392). The claimant has problems sleeping and maintaining concentration (as evidenced by his inability to go fishing alone) (Tr. 394).

The claimant's neighbor Shelly Pierce also testified at the administrative hearing. She indicated that the claimant's hygiene was "just unbelievable" and that he wears shoes that are too small for him (Tr. 395). Ms. Pierce added that she has to make him bathe, that he has a very short attention span (getting up and down constantly while eating dinner), and that he is unable to grocery shop on his own (Tr. 396). She also testified that the claimant will wear clothes five or six days before he will wash them, sleeps very infrequently, and cries often (Tr. 398-99).

The claimant contends, *inter alia*, that the ALJ failed to properly analyze Dr. Mallgren's opinion as to his mental limitations. Medical opinions from a treating physician such as Dr. Mallgren are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to which they are entitled by analyzing all of the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [404.1527]."), *quoting Watkins,* 350 F.3d at 1300. The applicable factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) any other factors that tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decides to reject a treating physician's opinions entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must

be "clear to any subsequent reviewers the weight the ALJ gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300.

The ALJ evidently considered Dr. Mallgren to be the claimant's treating physician because he referenced the factors applicable to treating physician opinions set out in 20 C.F.R. § 404.1527 (Tr. 22). But the ALJ failed to apply these factors in any meaningful way, and apparently rejected Dr. Mallgren's opinion for two reasons: (i) because it was "not clear that Dr. Mallgren is familiar with the definition of 'disability' contained in the Social Security Act and regulations"; and, (ii) because Dr. Mallgren's opinion "contrasts sharply and is without substantial support from the other evidence of record." (Tr. 22). Such analysis by the ALJ was legally deficient for several reasons.

First, it is irrelevant whether Dr. Mallgren understood the meaning of "disability" for social security purposes. He did not opine that the claimant was disabled (under the applicable regulations or otherwise), nor should he have done so, as this is an issue left to the sole discretion of the Commissioner. *See, e. g.,* 20 C.F.R. § 404.1527(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Instead, Dr. Mallgren simply rendered his medical opinion as to the nature and degree of the claimant's mental limitations and their impact on his ability to perform various work-related activities, all of which Dr. Mallgren was entitled to do in a medical source statement. *See* Soc. Sec. Rul. 96-5p, 1996 WL 374183, * 4 ("Medical source

statements are medical opinions submitted by acceptable medical sources . . . about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis.").  Ironically, the ALJ criticized Dr. Mallgren anyway for invading the province of the Commissioner (even though he did not) by characterizing his opinion as "equivalent to an RFC assessment." *See id.* at * 5 (noting that "the overall RFC assessment is an administrative finding on an issue reserved to the Commissioner").

Second, the ALJ's finding that Dr. Mallgren's opinion was inconsistent with other medical evidence in the case is essentially meaningless because the ALJ failed to specify the inconsistencies to which he was referring.  *See Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300; *Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.").  But even if Dr. Mallgren's opinion was not entitled to controlling weight (either because it was inconsistent with other medical evidence, or because it was on an issue reserved to the Commissioner), the ALJ was still required to determine the proper weight to give it by applying all of the factors in 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927.  *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion

is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527."), *quoting Watkins,* 350 F.3d at 1300. *See also Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("An ALJ is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."); Soc. Sec. Rul. 96-5p, 1996 WL 374183, *3 ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). The ALJ performed no such evaluation here.

Because the ALJ failed to properly analyze the opinion of the claimant's treating physician, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

### Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. The undersigned Magistrate Judge accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED for further proceedings consistent herewith. Any objections to

this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

      **DATED** this 14th day of September, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma